Perla M. Kuhn
Rory J. Radding
H. Straat Tenney
EDWARDS WILDMAN PALMER LLP
750 Lexington Avenue
New York, New York 10022
Phone (212) 308-4411

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                       :

BUCCELLATI HOLDING ITALIA SPA and           :
BUCCELLATI, INC.                             :
                                       :
                 Plaintiffs,                          :
                                        :
       - v -                                        :
                                          :      11-cv-07268 (PGG)
LAURA BUCCELLATI, LLC, LAURA                 :
BUCCELLATI, LILIAN AZEL, ABC                 :
CORPORATIONS 1-10, and JOHN DOES 1-10        :
                                        :
                 Defendants.                          :
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**FOR LACK OF JURISDICTION AND TO TRANSFER**
**<u>PURSUANT TO FORUM NON CONVENIENS</u>**

NYC 422743.5

# TABLE OF CONTENTS

**Page**

RELEVANT FACTS ........................................................................................................ 1

I.      THE PARTIES ...................................................................................................... 1

II.     THE BUCCELLATI TRADEMARKS ................................................................. 2

III.    DEFENDANTS' UNLAWFUL CONDUCT ......................................................... 3

IV.    DEFENDANTS' CONTACTS WITH NEW YORK ............................................ 3

        A.     Defendants' National Marketing Campaign ............................................ 4

        B.     Promotion Of Defendants' Infringing Items In New York ...................... 5

        C.     Defendants' Sales To New York ............................................................. 6

        D.     Defendants' Interactive Website ............................................................. 7

ARGUMENT .................................................................................................................. 7

V.      THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS ................... 7

        A.     Specific Jurisdiction Exists Over Defendants Pursuant to CPLR §302(a)(1) ....... 7

               1.    The Sale Of An Infringing Handbag Establishes Jurisdiction ................. 8

               2.    Defendants' Additional Business Transactions In New York Further Warrant Personal Jurisdiction ...................................................... 8

               3.    Sale to Maxine Kaplan Should Be Recognized In Jurisdiction Analysis ........................................................................................................ 9

        B.     Jurisdiction Over Defendants Exists Pursuant To CPLR § 302(a)(3)(ii) ............ 11

               1.    Defendant Committed A Tortious Act Without The State ..................... 12

               2.    Defendants' Actions Caused Injury To Plaintiff Within The State ......... 12

               3.    Defendant Reasonably Should Have Expected Its Conduct To Have Consequences In New York ...................................................... 13

               4.    Defendants Derive Substantial Revenue From International And Interstate Commerce ........................................................................ 14

        C.     Exercising Jurisdiction Over Defendants In New York Comports With Due Process ........................................................................................... 15

               1.    Defendant Has Sufficient "Minimum Contacts" With New York .......... 16

               2.    Exercising Jurisdiction Over Defendant Is Reasonable ......................... 17

VI.    THE MOTION TO DISMISS FOR IMPROPER VENUE SHOULD BE DENIED ...... 18

        A.     General Principles ................................................................................ 18

|  | B. | Venue Is Proper In This District ...................................................... | 19 |
|  |  | 1. | Defendants Actively Pursued Efforts To Market Infringing Goods In New York ........................................................................ | 19 |
|  |  | 2. | Defendants Sold Infringing Product In New York ................................ | 20 |
| VII. | | THE MOTION TO TRANSFER SHOULD BE DENIED .......................... | 21 |
|  | A. | Defendants Failed To Demonstrate That Florida Is A Proper Venue ................ | 21 |
|  | B. | Defendants Failed To Meet Its Heavy Burden To Justify Transfer .................. | 21 |
|  |  | 1. | Buccellati's Choice Of Home Forum Is Entitled To Considerable Weight ................................................................................ | 21 |
|  |  | 2. | The Convenience Of The Witnesses Does Not Favor Transfer ............. | 22 |
|  |  |  | a. | Defendants' Witnesses Are Largely Irrelevant ........................... | 22 |
|  |  |  | b. | Plaintiffs' Witnesses Are In New York ..................................... | 23 |
|  |  | 3. | The Remaining Factors Do Not Favor Transfer ................................... | 24 |
| | | CONCLUSION .................................................................................... | 25 |

## TABLE OF AUTHORITIES

<u>Page(s)</u>

<u>Cases</u>

<u>American Network, Inc. v. Access Am./Connect Atlanta, Inc.</u>,
   975 F.Supp. 494, 496 (S.D.N.Y. 1997) ......................................................................passim

<u>Asahi Metal Indus. Co. v. Superior Court</u>,
   480 U.S. 102, 113-14, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).......................................... 18

<u>Bank Brussels Lambert v. Fiddler Gonzalez</u>,
   305 F.3d 120, 124 (2d Cir. 2002) ................................................................................ 7, 8

<u>Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc.</u>,
   923 F. Supp. 433, 437 (S.D.N.Y. 1996)............................................................................ 16

<u>Bensusan Rest. Corp. v. King</u>,
   126 F.3d 25, 29 (2d Cir. 1997) ..................................................................................... 14

<u>Bensusan Rest. Corp. v. King</u>,
   937 F.Supp. 295, 299 (S.D.N.Y. 1996), <u>aff'd</u>, 126 F.3d 25 (2d Cir. 1997)............................ 8

<u>Cable News Network, L.P. v. GoSMS.com, Inc.</u>,
   No. 00 Civ. 4812, 2000 U.S. Dist. LEXIS 16156, at * 15-16 (S.D.N.Y. Nov. 6, 2000)...17, 18

<u>Cartier v. Micha, Inc.</u>,
   2007 U.S. Dist. LEXIS 4599, at *7 (S.D.N.Y. Apr. 20, 2007) ..................................18, 19, 20

<u>Cartier v. Seah</u>,
   598 F.Supp.2d 422, 426 (S.D.N.Y. 2009).......................................................................... 9

<u>Centaur Communications v. A/S/M Communications</u>,
   830 F.2d 1217, 1222 (2d Cir. 1987) ................................................................................ 24

<u>Chloe v. Queen Bee of Beverly Hills, LLC</u>,
   571 F.Supp. 2d 518, 524-25 (S.D.N.Y. 2008), <u>overruled by</u> 616 F.3d 158 (2d. Cir.
   2010) ......................................................................................................................... 9

<u>Chloe v. Queen Bee of Beverly Hills, LLC</u>,
   616 F.3d 158, 164 (2d Cir. 2010) ..............................................................................15, 16

<u>Citigroup, Inc. v. City Holding, Co.</u>,
   97 F.Supp. 2d 549, 564 (S.D.N.Y. 2000)....................................................................... 7, 12

i

D'Anton Jos, S.L. v. Doll Factory, Inc.,
  937 F.Supp. 320, 321-22 (S.D.N.Y. 1996) ....................................................19, 20

Daniel v. American Bd. of Emergency Medicine,
  428 F.3d 408 (2d Cir. 2005) ................................................................. 18

Energy Brands Inc. v. Spiritual Brands, Inc.,
  571 F.Supp. 2d 458, 472 (S.D.N.Y. 2008) .......................................... 15

Fifth Avenue of Long Island Realty Associates v. Caruso Mgmt Co., Ltd.,
  2009 U.S. Dist. LEXIS 13369, *42 (E.D.N.Y. Feb. 17, 2009) ...........21, 22, 24, 25

Grand River Enters Six Nations, Ltd. v. Pryor,
  425 F.3d 158, 166 (2d Cir. 2005) .......................................................... 7

Gucci America, Inc. v. Frontline Processing Corp.,
  721 F.Supp. 2d 228, 241-42 (S.D.N.Y. 2010) ..................................... 12

Gulf Ins. Co. v. Glasbrenner,
  417 F.3d 353, 355 (2d Cir. 2005) ......................................................... 18

Hermes Int'l v. Lederer de Paris Fifth Avenue,
  219 F.3d 104, 108-09 (2d Cir. 2000) .................................................... 11

Hsin Ten Enterprise USA, Inc. v. Clark Enterprises,
  138 F.Supp.2d 449, 459 (S.D.N.Y. 2000) ...........................................17, 19, 20

Martinez v. Am. Standard,
  91 A.D.2d 652, 457 N.Y.S.2d 97 (N.Y. App. Div. 2d Dep't 1982) ..................... 14

Mattel, Inc. v. Adventure Apparel,
  2001 U.S. Dist. LEXIS 3179, at *9-10 (S.D.N.Y. Mar. 22, 2001) ................... 9, 19

Mattel, Inc. v. Procount Business Services,
  2004 WL 502190, at *2 (S.D.N.Y. Mar. 10, 2004) ................................. 9

Norex Petroleum, Ltd. v. Access Indus.,
  416 F.3d 146, 154 (2d Cir. 2005) ......................................................... 22

Parker Waichman Alonso LLP v. The Orlando Firm, P.C.,
  No. 09 Civ. 7410, 2010 U.S. Dist. LEXIS 47957, at *27 (S.D.N.Y. May 14, 2010)................
  .....................................................................................12, 13, 14

Phillip Morris USA, Inc. v. Veles, Ltd.,
  2007 U.S. Dist. LEXIS 19780, at *18 (S.D.N.Y. Mar. 13, 2007)........................... 9

Pilates, Inc. v. Pilates Institute, Inc.,
  891 F.Supp. 175, 182 (S.D.N.Y. 1995) ................................................ 19

Piper Aircraft Co. v. Reyno,
    454 U.S. 235, 255 (1981) ........................................................................................ 21

Rx USA Int'l, Inc. v. Superior Pharm. Co.,
    No. 04-Civ-5074, 2005 U.S. Dist. LEXIS 34255, at *14-16 (E.D.N.Y. Dec. 7, 2005) ......... 15

Savage Universal Corp. v. Grazier Constr., Inc.,
    04 Civ. 1089, 2004 U.S. Dist. LEXIS 16088, at * 30 (S.D.N.Y. Aug. 13, 2004).....................
    ..................................................................................................................... 12, 13, 14, 18

Schwartz v. Marriott Hotel Svcs., Inc.,
    186 F.Supp.2d 245, 249 (E.D.N.Y. 2002) ............................................................ 22

Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC,
    450 F.3d 100, 106 (2d. Cir. 2006) ....................................................................... 11

Starmedia Network, Inc. v. Star Media Inc.,

    00 Civ. 4647, 2001 U.S. Dist. LEXIS 4870 (S.D.N.Y. Apr. 24, 2001)................ 12, 13, 14, 17

Stewart v. Vista Point Verlag,
    No. 99 Civ. 4425, 2000 WL 1459839, at *4 (S.D.N.Y. Sept. 29, 2000) .............................. 11

Topps Co., Inc. v. Gerrit J. Verburg Co.,
    961 F.Supp. 88, 90 (S.D.N.Y. 1997) ................................................................... 16

Totilo v. Herbert,
    538 F.Supp.2d 638, 640 (S.D.N.Y. 2008) ............................................................ 21

**Statutes**

15 U.S.C. § 1114 ................................................................................................ 11

15 U.S.C. § 1125(a) ........................................................................................... 11

15 U.S.C. § 1125(c) ........................................................................................... 11

15 U.S.C. § 1125(c)(2)(A) ................................................................................. 25

28 U.S.C. § 1391(b)(2) ...................................................................................... 18

CPLR 302(a) ...................................................................................................... 12

CPLR § 302 ........................................................................................................ 16

CPLR §302(a)(1) ............................................................................................. 7, 8

CPLR § 302(a)(3)(ii) ...................................................................................... 11, 15

New York GBL § 349-50 ......................................................................................................... 25

Plaintiffs Buccellati Holding Italia, S.p.A. and Buccellati, Inc. (collectively "Buccellati")

oppose defendants Laura Buccellati, LLC, Laura Buccellati, and Lilian Azel's (collectively

"Defendants") motion to dismiss for lack of personal jurisdiction or, alternatively, to transfer.

## RELEVANT FACTS

## I.   THE PARTIES

Plaintiffs are a New York corporation based in New York, New York, and an Italian

corporation based in Milan, Italy.  Plaintiff Buccellati Holding Italia, S.p.A. owns the trademarks

for all Buccellati brand items worldwide.  Plaintiff Buccellati, Inc. is the exclusive licensee in the

United States of all Buccellati brand goods and services.  ( Declaration of Alberto Milani

("Milani") ¶ 2, 3.)

Defendant Laura Buccellati ("Defendant Buccellati") is a Buccellati family member, who

sold her entire interest in the Buccellati companies in or about 1989.  She otherwise has no

commercial affiliation with Buccellati, but has individually and through defendant Laura

Buccellati, LLC attempted to capitalize on the popularity of the Buccellati brand by using and/or

permitting various companies to use LAURA BUCCELLATI-branded products.  (Compl. ¶ 18.)

Defendant Laura Buccellati, LLC is a Florida limited liability company based in Florida.

Defendant Buccellati is a managing partner and the Chief Executive Officer of Laura Buccellati,

LLC and is based in Florida.  (Laura Tr. 165:1-4.)[1]  Defendant Buccellati has been with Laura

Buccellati, LLC since the company started in or about October 2007.  (Id. 174:20-22.)

Defendant Lilian Azel ("Defendant Azel"), also based in Florida, began working at Laura

---

[1] Deposition transcripts are cited by reference to the deponent's first name followed by the
designation "Tr." and the cited transcript page numbers.  The relevant deposition transcripts of
Laura Buccellati, Lilian Azel, and Tara Solomon are submitted as Exhibits 1 to 3, respectively,
of the H. Straat Tenney Declaration ("Tenney").

Buccellati LLC in or about 2009 and is the other managing partner.  She also acts as the company's Chief Operating Officer.  (Lilian Tr. 9:21-23.)

Defendants Laura Buccellati and Lilian Azel are the active and controlling forces behind Defendant Laura Buccellati, LLC.  (Compl. ¶¶ 6-8; Laura Tr. 17:15-22.)  Defendant Buccellati owns approximately 80 percent of the company and Defendant Azel owns the remaining shares. (Lilian Tr. 10:21 to 11:10.)  Generally, Defendant Buccellati controls sales and marketing and Defendant Azel handles the finances and operations (Laura Tr. 11:23 to 12:2.)  They also share many duties: Defendants Buccellati and Azel designed the stylized logo and related promotional materials (Id. at 167:20-23; 169:15-16); they design the infringing handbags (Id. at 11:3-11); they designed the website (Lilian Tr. 182:13-16); they work with retailers (Laura Tr. 11:3-11); and they have traveled to New York to promote their products. (Id. at 35:24 to 36:1.).

## II.   THE BUCCELLATI TRADEMARKS

Since the 1700s, the Buccellati family has been crafting some of the finest jewelry and silverware in the world.  Beginning in the 1920s, with the release of its ruby encrusted Evening Bag, Buccellati has manufactured and sold handbags, clutches, and purses, made of various materials, including, leather, gold, silver, and textiles.  Today, the BUCCELLATI brand is synonymous with luxury, quality, and craftsmanship, and consumers and the trade instantly identify Buccellati as the source of all products and services bearing the LAURA and BUCCELLATI trademarks.  (Milani ¶ 4.)  Buccellati has been continuously using the LAURA and BUCCELLATI trademarks in the United States at least as early as 1969 and 1952, respectively, and owns three U.S. Trademark Registrations for the BUCCELLATI trademark for a range of goods and services.  As a result of Buccellati's extensive marketing and promotional efforts, as well as the high quality of its products, Buccellati's products have achieved an

outstanding reputation among consumers and the Buccellati trademarks are among the world's

most recognizable trademarks.  Id.

## III.   DEFENDANTS' UNLAWFUL CONDUCT

Defendants advertised, promoted, offered for sale, and sold handbags, wallets, scarves,

and belts that infringe the Buccellati Trademarks.  Such infringement is willful and continues

despite Buccellati's written protests.  (Compl. ¶ 21.)  Buccellati seeks injunctive relief and

damages for Defendants willful acts of trademark infringement, false designation of origin,

trademark dilution, unfair competition, and unfair and deceptive trade practices in violation of

the laws of the United States and the State of New York.  (Id. Counts I to VII.)

Defendants have sold 155 items, more than a third of which have been sold outside

Florida, including to California; Colorado; Missouri; Montana; Nevada; New York; Texas; and

Washington D.C. in the United States, and the Bahamas; Canada; Hong Kong; and Panama

internationally.  (Laura Tr. 27:15-21; Tenney Ex. 5.)

## IV.   DEFENDANTS' CONTACTS WITH NEW YORK

Buccellati relies on Defendants' intentional conduct in the State of New York to establish

jurisdiction over Defendants, including: (1) promoting infringing goods on a national level; (2)

promoting Defendants' infringing products to New York-based fashion editors and retail buyers,

(3) meeting with fashion editors in New York; (2) the sale of an infringing handbag to Maxine

Kaplan in New York; (4) operating two interactive websites by which consumers can access and

purchase infringing goods from anywhere in the United States, including New York; (5) shipping

LAURA BUCCELLATI-branded handbags to New York consumers; and (6) manufacturing

promotional goods bearing Defendants' logo in New York.

A.     **Defendants' National Marketing Campaign**

In early 2010, Defendants hired Tara Solomon, Inc. d/b/a Tara Ink ("Tara Ink"), a national public relations firm with offices in Los Angeles and Miami Beach. (Tara Tr. 10:17 to 11:1.)  This was the principal means by which Defendants promoted its products.  Tara Ink was generally tasked with obtaining national and regional press attention for Defendants' products, including editorials, interviews with Defendant Buccellati, product placement on nationally syndicated television programs, and celebrity styling opportunities. (Id. 8:7-11; Ex. 12)  The highlights of Defendants national marketing campaign efforts are as follows.

Defendants solicited business with high-end retailers in New York, Aspen, Chicago, Dallas, Los Angeles, and Washington D.C. (Tenney Exs. 8, 10, 14.)  Defendants also promoted its handbags to fashion editors in New York, discussed below, and regional media outlets.  In print, Defendants secured placements in national publications, such as Life & Style Weekly, Haute Living New York, Curvy Magazine, and Passport. (Id. at Ex. 12.)  Defendants reached out to Departures magazine and the New York Post to discuss advertising options. (Id. at Ex. 14.)  On the Internet, Defendants' products were featured on popular fashion blogs, such as NewYorkSocialDiary.com, Handbago.com, and GlamourNerd.com. (Id. at Exs. 9 and 14.)

On the red carpet, celebrity Maggie Grace, star of television's Lost and the Twilight series, wore Defendants' handbag at the InStyle after-party following the Golden Globes in Los Angeles. (Id. at Ex. 10.)  Defendants sent press releases of this event to national print, online, and television outlets.  Id.  This "sighting" was featured in the nationally circulated magazine Life & Style Weekly on March 1, 2010.  Id.  Celebrity Angela Bassett was also spotted with an

infringing handbag.  (Laura Tr. 218:19-24.)  Defendants sent "samples"[2] to Dancing with the

Stars reality-TV actress Cheryl Burke, and sent matching handbags to actress Katie Holmes and

daughter Suri.  In addition, Defendants sent a handbag to the producers of BravoTV's "Miami

Social Club" (Tenney Ex. 14.)

### B.   Promotion Of Defendants' Infringing Items In New York

In the spring of 2010, Defendants began planning a June trip to New York City to meet

with fashion editors to raise the profile and increase sales of LAURA BUCCELLATI-branded

bags.  (Laura Tr. 35:15-18, 91:24 to 92:3; Lilian Tr. 31:24 to 32:1.)  In advance of the New York

trip, Tara Ink, on behalf of Defendants, contacted retail buyers at Bergdorf Goodman, Saks Fifth

Avenue, Barneys, and Neiman Marcus.  (Tara Tr. 15:15 to 16:14, Tenney Ex. 16.)  Tara Ink also

contacted at least thirty-three (33) editors of New York-based fashion magazines and secured

"deskside"[3] appointments in New York at Conde Nast Traveler, InStyle, Lucky, Marie Claire,

Town & Country, Vogue, W Magazine, and Women's Wear Daily ("WWD").  (Tara Tr. 27:10-

18; Tenney Exs. 12, 16.)  Defendant Azel also scheduled a meeting with the Hong Kong Trade

Development Council in Manhattan.  (Lilian Tr. 38:24 to 39:1.)  Defendants sent a LAURA

BUCCELLATI-branded scarf to each New York editor they were scheduled to meet and to the

editor-in-chief of the relevant publication.  (Tenney Decl. Ex. 11.)

Between June 8 and June 10, 2010, Defendant Buccellati, Defendant Azel, and Tara

Solomon, principal of Tara Ink, traveled to New York City to promote Defendants' Fall/Winter

2010 Collection.  (Laura Tr. 35:15-18.)  During the New York meetings, Defendants promoted

their LAURA BUCCELLATI handbags and gave the editors LAURA BUCCELLATI scarves,

---

[2] A "sample" refers to handbags that Defendants sent to celebrities and New York-based fashion editors.  (Laura Tr. 38:19-21.)

[3] A "deskside" refers to a meeting with an editor at a fashion publication at his or her desk for the purpose of showing a client's product to the editor.  (Tara Tr. 21:10-17.)

"Lookbooks," and/or LAURA BUCCELLATI media kits.[4]   (Tara Tr. 23:14-17; 25:24 to 26:2.)
Defendants may have left a LAURA BUCCELLATI handbag with at least one editor.  (Tara Tr.
26:16-22.)  Editors at Town & Country and WWD photographed Defendants' LAURA
BUCCELLATI handbags.  (Tara Tr. 29:23 to 30:12; Tenney Ex. 15.)  The editors suggested that
Defendants add a shopping functionality to its website.  (Laura Tr. 43:20 to 44:4)

Subsequent to the June 2010 trip to New York, Defendants followed-up with each of the
New York editors by e-mail, sent samples to Allure, Conde Naste Traveler, Lucky, Marie Claire,
and Town & Country (Tenney Ex. 8), and Lookbooks to Lucky, Marie Claire and W Magazine
(Tara Tr. 29:9-22.).  Defendants contemplated a follow-up trip in July 2010.  (Tenney Ex. 16.)

### C.   Defendants' Sales To New York

Defendants concede the sale of a LAURA BUCCELLATI-branded handbag for $1,425 to
Maxine Kaplan at a New York address.  (Tenney Ex. 7.)  Ms. Kaplan initiated the order on
*shop.laurabuccellati.com* on October 5, 2011.  Id.  Prior to completing the sale to New York,
Defendant Azel tried to contact Ms. Kaplan multiple times by telephone and e-mail.  (Laura Tr.
41:21.)  On October 12, 2012, Defendants accepted payment from Ms. Kaplan, a New York
resident, for one LAURA BUCCELLATI-branded handbag.  (Laura Tr. 41:21.)  Defendants
shipped the LAURA BUCCELLATI-branded handbag to Ms. Kaplan in New York.  (Laura Tr.
139:20.)  Ms. Kaplan's purchase was an order transmitted through Defendants' website, but
finally executed by telephone.  Defendants acknowledge that they knew they were making a sale
to New York and that they did not refuse the sale on this basis.  (Lilian Tr. 166:11-17.)  Ms.

---

[4] A "Lookbook" is a photographic catalog of Defendants infringing handbags.  (Laura Tr. 198:1-
10.)  A "media kit" consists of a press release concerning information on the LAURA
BUCCELLATI handbag collection.  (Tara Dep. 26:3-7.)

Kaplan did not in any way force the sale or the shipment to New York.  In fact, the sale was finally executed due, in part, to Defendant Azel's persistence.  (Id. 164:19 to 166:24.)

**D.      Defendants' Interactive Website**

Defendants purchased the domain name *www.laurabuccellati.com* in 2007.  (Laura Tr. 19:3-9.)  In or about June 2010, Defendants followed the advice of the New York editors and installed shopping functionality to its website which accepted orders from all fifty states, including New York.  (Laura Tr. 43:23 to 44:4.)  Defendants created an interactive website to improve sales and connect with anyone with an Internet connection.  (Laura Tr. 155:9-14.)

**ARGUMENT**

**V.      THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS**

To determine personal jurisdiction over a non-domiciliary in a case involving a federal question, the courts engage in a two-step analysis.  Bank Brussels Lambert v. Fiddler Gonzalez, 305 F.3d 120, 124 (2d Cir. 2002).  Personal jurisdiction over Defendants in a trademark infringement case is determined, in the first instance, by the laws of New York.  See, e.g., American Network, Inc. v. Access Am./Connect Atlanta, Inc., 975 F.Supp. 494, 496 (S.D.N.Y. 1997); Citigroup, Inc. v. City Holding, Co., 97 F.Supp. 2d 549, 564 (S.D.N.Y. 2000).  "[I]f jurisdiction is proper under New York law, it must [also] be determined whether exercising jurisdiction over defendant comports with due process."  Citigroup, 97 F.Supp. 2d at 564.

**A.      Specific Jurisdiction Exists Over Defendants Pursuant to CPLR §302(a)(1)**

Section 302(a)(1) of the CPLR is a single act statute requiring but one purposeful transaction to confer jurisdiction in New York.  Grand River Enters Six Nations, Ltd. v. Pryor, 425 F.3d 158, 166 (2d Cir. 2005); Citigroup, 97 F.Supp. 2d at 564 (A "single transaction of business is sufficient to give rise to jurisdiction under CPLR § 302(a)(1), even where defendant

never enters the state, if the claim arises out of the transaction.").  A party can establish

jurisdiction over a defendant under Section 302(a)(1) where the defendant (a) either (i)

transacted business within the state or (ii) contracted to supply goods in the state; and (b) the

claim arises out of that activity.  <u>Bank Brussels</u>, 171 F.3d at 784.

### 1.    The Sale Of An Infringing Handbag Establishes Jurisdiction

Plaintiffs' claims arise directly out of Defendants' business activities in New York.

Trademark infringement occurs "where the passing off occurs."  <u>Bensusan Rest. Corp. v. King</u>,

937 F.Supp. 295, 299 (S.D.N.Y. 1996), <u>aff'd</u>, 126 F.3d 25 (2d Cir. 1997).  "Under this standard,

courts have found that the <u>offering for sale</u> of even one copy of an infringing product in New

York, even if no sale results, is sufficient to vest a court with jurisdiction over the alleged

infringer."  <u>Bensusan</u>, 937 F.Supp. 295, 299, <u>aff'd</u>, 126 F.3d 25 (2d Cir. 1997) (emphasis added).

In consequence, Defendants' sale to Maxine Kaplan is sufficient for the exercise of personal

jurisdiction.  Furthermore, Defendants freely admit that "the shopping cart function came out of

the New York meetings" in June 2010, and that this sales functionality led to the sale of the bag

to Ms. Kaplan.  (Laura Tr. 43:20-44:9, 63:8-13).

### 2.    Defendants' Additional Business Transactions In New York Further Warrant Personal Jurisdiction

In addition to selling an infringing handbag to a New York resident, Defendants' have

transacted business in New York by: (1) contacting at least thirty-three (33) fashion editors in

New York to schedule deskside appointments (Tenney Ex. 12); (2) contacting retail buyers in

New York, including Bergdorf Goodman, Saks Fifth Avenue, Barneys, and Neiman Marcus

(Tenney Ex. 8); (3) meeting with up to nine (9) fashion editors in New York to promote its

handbags (Tenney Ex. 13); (4) shipping infringing handbags, Lookbooks, and/or media kits to

New York magazine editors at Allure, Conde Naste Traveler, Lucky, Marie Claire, and Town &

Country (Tenney Ex. 8); and (5) contracting with Motivators, Inc., a New York company, for the manufacture of LAURA BUCCELLATI-branded vanity mirrors.  (Tenney Ex. 17.).  Based on the foregoing, Defendants have transacted business in New York.

### 3.    Sale to Maxine Kaplan Should Be Recognized In Jurisdiction Analysis

Defendants' argue that the sale to Ms. Kaplan should be ignored. (Def. Br. 5.)[5]

Defendants' purposeful conduct – i.e., offering for sale to anyone with an Internet connection infringing handbags, contacting Ms. Kaplan by phone and e-mail to complete the transaction, accepting payment and shipping the handbag into New York – is more than a purchase by an investigator.  In Judge Sweet's words:

> [Defendant] points out that the sale was to [plaintiff's] investigator, and contends that personal jurisdiction cannot be premised on such trickery. [Defendant] also maintains that personal jurisdiction cannot be based on a single contact.  The fact that the sale was made to an agent of [plaintiff] is irrelevant.  The fact that there was only one transaction does not vitiate personal jurisdiction due to the nature of the contact, that is, because [defendant's] activities were purposeful and there was a substantial relationship between the transaction and the claim asserted.

> Mattel, Inc. v. Adventure Apparel, 2001 U.S. Dist. LEXIS 3179, at *9-10 (S.D.N.Y. Mar. 22, 2001).

Courts that discount such purchases rely on two bases.  First, they argue that such purchases amount to "trickery," and that it is inequitable to rely on a contact with the forum that was "manufactured" by the plaintiff.  This argument is misplaced in cases, like the sale to

---

[5] There is a line of decisions that take the view that purchases by investigators do not factor in jurisdictional analysis.  See Chloe v. Queen Bee of Beverly Hills, LLC, 571 F.Supp. 2d 518, 524-25 (S.D.N.Y. 2008) (collecting cases), overruled by 616 F.3d 158 (2d. Cir. 2010).  **This view is not unanimous, however.**  See Cartier v. Seah, 598 F.Supp.2d 422, 426 (S.D.N.Y. 2009); Phillip Morris USA, Inc. v. Veles, Ltd., 2007 U.S. Dist. LEXIS 19780, at *18 (S.D.N.Y. Mar. 13, 2007); Mattel, Inc. v. Procount Business Services, 2004 WL 502190, at *2 (S.D.N.Y. Mar. 10, 2004); Mattel, Inc. v. Adventure Apparel, 2001 U.S. Dist. LEXIS 3179, at *9-10 (S.D.N.Y. Mar. 22, 2001) (all approving jurisdiction based on such purchases).

Maxine Kaplan, where the defendants actively solicited the sales of the type at issue both before and subsequent to the order.

Defendants added the shopping cart functionality of its website to increase sales and make it possible for anyone with an Internet connection, and specifically Ms. Kaplan in New York, to purchase one of Defendants' handbags.  Moreover, the sale to Ms. Kaplan was not an ordinary Internet transaction.  The bag that Ms. Kaplan purchased was not available in the color originally ordered.  (Lilian Tr. 167:13-15.)  For over a week, Defendant Azel called Ms. Kaplan in New York and corresponded with her by e-mail before finally completing the transaction. (Lilian Tr. 165:11 to 166:7).  Defendant Azel even suggested that Ms. Kaplan purchase a different, more expensive handbag from Defendants.  (Lilian Tr. 169:16 to 170:7)  During this period, Defendants were aware that Ms. Kaplan was from New York and did not object to the sale.  (Laura Tr. 151:12-14; Lilian Tr. 159:6-8, 166:11-14.)

In sum, Defendants actively solicited customers from throughout the United States and abroad.  The sale to Ms. Kaplan was in no way coerced, and was in every way a sale in the ordinary course for Defendants.  To call the sale "trickery" simply ignores the realities of Defendants' persistent efforts to accommodate its New York customer.  Indeed, Defendants could have merely refused to execute the sale with Ms. Kaplan, but it did not.  See American Network, 975 F.Supp. at 499 ("If defendant sought to avoid subjecting itself to suit in New York, it could have chosen not to send [its goods there].").

A second argument advanced by some courts is that because the purchaser was an investigator working for the plaintiff, there was no confusion and hence no "passing off," and thus such a purchase cannot count for jurisdiction.  This argument is flawed for two reasons.

First, the argument focuses solely on traditional "point of sale" confusion—i.e.,

confusion by the immediate customer.  See Stewart v. Vista Point Verlag, No. 99 Civ. 4425, 2000 WL 1459839, at *4 (S.D.N.Y. Sept. 29, 2000).  But it is well settled that actionable confusion under the Lanham Act includes other forms of confusion, such as "post sale" confusion and likelihood of dilution.  Hermes Int'l v. Lederer de Paris Fifth Avenue, 219 F.3d 104, 108-09 (2d Cir. 2000).  By placing infringing goods into the stream of commerce, Defendants created a likelihood of post-sale confusion and dilution, regardless of what specific knowledge the immediate purchaser possessed.

Second, and more fundamentally, the "no confusion" argument is flawed because it conflates actual confusion—not a required showing under the Lanham Act—with likelihood of confusion, which is.  15 U.S.C. §§ 1114(1), 1125(a) and (c).  The issue before the Court in a trademark case is not whether anyone to date has been confused, but rather whether Defendants' activities, if repeated, are likely to cause confusion and/or dilute the distinctiveness of Buccellati's brand in the future to some pertinent segment of the purchasing public.  The investigator's true knowledge – of which Defendants were utterly ignorant – has no bearing on this issue.[6]

**B.**     **Jurisdiction Over Defendants Exists Pursuant To CPLR § 302(a)(3)(ii)**

Alternatively, a plaintiff relying on Section 302(a)(3)(ii) must show that (1) the defendant committed a tortious act outside New York; (2) the cause of action arose from that act; (3) the tortious act caused an injury to a person or property in New York; (4) the defendant expected or should reasonably have expected the act to have consequences in New York; and (5) the defendant derived substantial revenue from interstate or international commerce.  See Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 106 (2d. Cir. 2006).

---

[6] For the same reason, if Ms. Kaplan were an ordinary consumer that made the purchase without confusion, this fact would not determine the "likelihood of confusion" inquiry.

### 1.   Defendant Committed A Tortious Act Without The State

Outside its sale to New York, Defendants have sold infringing products throughout the United States, including in California, Colorado, Florida, Missouri, Montana, Nevada, and Washington D.C.   (Laura Tr. 27:15-21.)  This constitutes a tortious act committed outside of New York and satisfies the first element of this inquiry.  See, e.g., Savage Universal Corp. v. Grazier Constr., Inc., 04 Civ. 1089, 2004 U.S. Dist. LEXIS 16088, at * 30 (S.D.N.Y. Aug. 13, 2004).  Further, Defendants' creation and maintenance of its infringing websites in Florida and Arizona constitutes tortious activity by Defendants outside New York.  See, e.g., Starmedia Network, Inc. v. Star Media Inc., 00 Civ. 4647, 2001 U.S. Dist. LEXIS 4870, at *5-6 (S.D.N.Y. Apr. 24, 2001) ("Where an Internet site displays allegedly infringing marks, the tort is deemed to be committed where the website is created and/or maintained" for the purposes of CPLR 302(a); Citigroup, 97 F.Supp. 2d at 568; Savage, 2004 U.S. Dist. LEXIS 16088, at *29.

### 2.   Defendants' Actions Caused Injury To Plaintiff Within The State

The injury in trademark infringement and dilution cases is typically felt where the plaintiff's claim of harm occurs where it conducts business, and can include injury in the form of likely confusion, damage to goodwill, lost sales, or lost customers.  See Gucci America, Inc. v. Frontline Processing Corp., 721 F.Supp. 2d 228, 241-42 (S.D.N.Y. 2010); Parker Waichman Alonso LLP v. The Orlando Firm, P.C., No. 09 Civ. 7410, 2010 U.S. Dist. LEXIS 47957, at *27 (S.D.N.Y. May 14, 2010) (holding plaintiff came forward with sufficient evidence, through declarations and relevant documents, to support plaintiff's claim of harm in the New York market).

Defendants' promotional activities, sale, offers for sale, and use of an interactive website has caused injury to Buccellati within New York.  Plaintiff and Defendant compete for the same

types of consumers and market to some of the same retailers – e.g., Defendants' contacted retail buyers at Bergdorf Goodman, a Buccellati retailer in New York City and thirty-three (33) fashion editors in magazines that cover Buccellati's industry.  (Milani ¶ 11.)  Starmedia Network, 2001 U.S. Dist. LEXIS 4870, at *6; Savage, 2004 U.S. Dist. LEXIS 16088, at *29.

This Court should also treat as true Buccellati's allegations that Defendants' "use of the Infringing Mark caused (and will likely continue to cause): actual confusion in the marketplace, harm to the business reputation and goodwill of Buccellati, and damage to Buccellati's business relations with consumers and prospective consumers."  (Compl. ¶ 24).  Indeed, Defendants' LAURA BUCCELLATI trademark is practically indistinguishable from and likely to cause confusion with and dilution of Plaintiffs' LAURA and BUCCELLATI marks.

Moreover, Defendants admit to traveling to New York with LAURA BUCCELLATI-branded handbags, on multiple occasions, for the purpose of promoting its goods and acknowledge that it sold and/or shipped infringing handbags to New York.  (Laura Tr. 91:24 to 92:3.)  Defendants' agent admits that it sent samples to Allure, Conde Naste Traveler, Lucky, Marie Claire, and Town & Country and contacted buyers, including Bergdorf Goodman, for the purpose of selling Defendants' handbags in New York.  (Tenney Ex. 8.)

### 3. Defendant Reasonably Should Have Expected Its Conduct To Have Consequences In New York

The "foreseeability" requirement "relates to forum consequences generally and not to the specific event which produced injury within the state."  American Network, 975 F.Supp. at 497 (internal quotations and citation omitted).  "New York courts require some discernible effort by the defendant to directly or indirectly serve the New York market."  Parker Waichman, 2010 U.S. Dist. LEXIS 47957, at *27.  This requirement is satisfied by "tangible manifestations" of

the non-domiciliary defendant's attempt to reach the New York market.  <u>American Network</u>, 975 F.Supp. at 498 (<u>citing</u> <u>Martinez v. Am. Standard</u>, 91 A.D.2d 652, 653-54, 457 N.Y.S.2d 97 (N.Y. App. Div. 2d Dep't 1982).

Defendants' "tangible manifestations" in this case include: (1) posting statements on its website that online purchases are "available to residents of the United States, for delivery to clients in the United States," including New York (Tenney Ex. 4.); (2) launching a national marketing campaign (Tara Tr. 8:7-11.); (3) contacting and meeting with New York-based fashion editors to promote Defendants' infringing handbags; (4) selling and/or shipping infringing handbags into New York; and (5) contracting with a New York company to manufacture branded promotional materials.

Therefore, Defendants reasonably should have expected that its Internet and website activities, promotional activities in New York, sales to New York, contract for manufacture in New York and national marketing campaign would have consequences in New York.  <u>See</u> <u>Parker Waichman</u>, 2010 U.S. Dist. LEXIS 47957, at *27-28 (finding that Defendants comments on its website suggesting that it targets a national audience are "tangible manifestations' of Defendant's attempts to serve the New York market."); <u>American Network</u>, 975 F.Supp. at 498 ("It was reasonably foreseeable to defendant that publishing its home page on its Web site, with the offending mark, would have New York consequences."); <u>Starmedia Network</u>, 2001 U.S. Dist. LEXIS 4870, at *7-8; <u>Savage</u>, 2004 U.S. Dist. LEXIS 16088, at *29 (S.D.N.Y. 2004).

### 4.      Defendants Derive Substantial Revenue From International And Interstate Commerce

This provision "is intended to exclude non-domiciliaries whose business operations are of a local character."  <u>Bensusan Rest. Corp. v. King</u>, 126 F.3d 25, 29 (2d Cir. 1997).  There is no

question that Defendants are engaged in international and interstate commerce.  All of Defendants' goods (except certain promotional materials) are manufactured and embossed with the LAURA BUCCELLATI logo in Italy and imported ready-to-sell into the United States. (Laura Tr. 67:9 to 68:18.)  Moreover, Defendants market over the Internet and in the media to a nationwide audience with the intention of reaching into New York, and have traveled to New York to promote its handbags.  (Laura Tr. 27:13-21, 83:23-84:9; Lilian Tr. 90:22 to 91:3; Tara Tr. 29:2-5.)

It is also apparent that Defendants derive substantial revenue from its international and interstate activities.  One-hundred percent of Defendants' handbags travel in international commerce after they are manufactured in Italy and over one-third of the infringing handbags are sold outside of Florida.  Defendants' website lists the national and international scope of Defendants' sales.  (Tenney Ex. 4.)  Therefore, the final element of CPLR § 302(a)(3)(ii) is satisfied.  See Rx USA Int'l, Inc. v. Superior Pharm. Co., No. 04-Civ-5074, 2005 U.S. Dist. LEXIS 34255, at *14-16 (E.D.N.Y. Dec. 7, 2005) ("[Defendant's] web site states that [its] clients include multinational corporations . . . [and] corporations appear to be based out of state . . . Accordingly, [the defendant] derives substantial revenue from interstate commerce.") (citations omitted); Energy Brands Inc. v. Spiritual Brands, Inc., 571 F.Supp. 2d 458, 472 (S.D.N.Y. 2008).

### C.   Exercising Jurisdiction Over Defendants In New York Comports With Due Process

Since jurisdiction is found under the long-arm statute, the court next determines whether New York's extension of jurisdiction is permissible under the Due Process Clause of the Fourteenth Amendment.   Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010).  "Ordinarily . . . if jurisdiction is proper under the CPLR, due process will be satisfied

because Section 302 of the CPLR does not reach as far as the constitution permits." Topps Co., Inc. v. Gerrit J. Verburg Co., 961 F.Supp. 88, 90 (S.D.N.Y. 1997). The Due Process "analysis has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." Chloe, 616 F.3d at 164.

### 1.     Defendant Has Sufficient "Minimum Contacts" With New York

Courts examine the totality of the defendant's contacts with New York, in determining the strength of the contacts under both Section 302(a) and the Due Process Clause. Chloe, 616 F.3d at 164. Here, Defendants' contacts with the forum – the sale of an infringing handbag; contacting thirty-three (33) New York-based fashion editors; meeting with nine (9) New York-based fashion editors to promote its handbags; shipping infringing handbags to New York-based fashion editors; reaching out to New York retailers Bergdorf Goodman, Saks Fifth Avenue, Barneys and Neiman Marcus; contracting with a New York company for the manufacture of branded promotional material – establish minimum contacts. Cf. Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc., 923 F. Supp. 433, 437 (S.D.N.Y. 1996) (due process satisfied when jurisdiction based on sale of infringing goods into New York).

Defendants have additional, purposeful contacts with New York that buttress a finding of "minimum contacts" with the State. Specifically, Defendants operate interactive websites where Defendants communicate considerable information about its products, the extent of its retail sales and media coverage. (Tenney Ex. 6.) Defendants' websites enable the viewer to purchase infringing handbags by providing payment and shipping information. Id. They also provide an e-mail address, phone number, and a facsimile number as they permit the exchange of information between users in another state and Defendants. Id.

There is a "spectrum" of Internet activity that spans from "passive" websites that merely

advertise but do not permit an exchange of information, to websites "in which the defendant clearly does business over the Internet." Starmedia Network, 2001 U.S. Dist. LEXIS 4870, at *10. Defendants' operation of an interactive website alone satisfies the constitutional "minimum contacts" test. See, e.g., Cable News Network, L.P. v. GoSMS.com, Inc., No. 00 Civ. 4812, 2000 U.S. Dist. LEXIS 16156, at * 15-16 (S.D.N.Y. Nov. 6, 2000); Hsin Ten Enterprise USA, Inc. v. Clark Enterprises, 138 F.Supp.2d 449, 459 (S.D.N.Y. 2000) ("[A]n interactive website supports a finding of personal jurisdiction over the defendant."). Unlike the cases relied upon by Defendants (Def. Br. 11-12) where the defendant's websites were the only contact with the forum state, Defendants' interactive website is but one of many contacts with New York.

Moreover, Defendants Buccellati and Azel admit that they knew about Plaintiffs' trademarks and Plaintiffs' competitive goods in New York prior to Defendants' activities in New York. (Laura Tr. 30:5-8; Lilian Tr. 197:7-15.) See American Network, 975 F.Supp. at 500 ("There is another factor that made it reasonable for defendant to anticipate being sued in New York: its alleged awareness of plaintiff's mark and location."); Starmedia Network, 2001 U.S. Dist. LEXIS 4870, at *12.

### 2. Exercising Jurisdiction Over Defendant Is Reasonable

Once a plaintiff has shown minimum contacts, the burden shifts to defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Cable News Network, 2000 U.S. Dist. LEXIS 16156, at * 15-16. Defendants have failed to carry that burden. In evaluating reasonableness, courts look at the following factors:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's

interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113-14, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987).

Much of the burden complained of by Defendants (Def. Br. 17) is the burden of litigating *per se*, which would be experienced regardless of the jurisdiction. Turning to the other factors, New York, its Courts, and Plaintiffs have a clear interest in effectively and efficiently adjudicating this dispute, which involves harm to New York residents. See, e.g., Cable News Network, 2000 U.S. Dist. LEXIS 16156, at * 16; Savage, 2004 U.S. Dist. LEXIS 16088, at *35; American Network, 975 F.Supp. at 500. The Due Process Clause is not violated by exercising jurisdiction over Defendants in this Court.

## VI.    THE MOTION TO DISMISS FOR IMPROPER VENUE SHOULD BE DENIED

### A.    General Principles

As with personal jurisdiction, plaintiff need only make a *prima facie* showing of venue to defeat the motion. See Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005). All facts are construed in a light most favorable to the plaintiff. Cartier v. Micha, Inc., 2007 U.S. Dist. LEXIS 4599, at *7 (S.D.N.Y. Apr. 20, 2007). Under Section 1391(b), venue is proper in the judicial district where "a substantial part of the events . . . giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2).

"Determining whether events are sufficiently substantial to support venue is not achieved by 'simply adding the number of contacts.'" Cartier v. Micha, 2007 U.S. Dist. LEXIS 4599, at *10-11 (quoting Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 433 (2d Cir. 2005). Courts do not restrict venue to the district in which the "most substantial" events giving rise to a claim occurred. Daniel, 428 F.3d at 432. Rather, for trademark infringement claims,

courts have held that venue may be proper in each jurisdiction where infringement is properly alleged to have occurred.  See e.g., Mattel, 2001 U.S. Dist. LEXIS 3179, at *4-5.  Hsin Ten, 138 F.Supp.2d at 459.

If a defendant targets New York by advertising and actively pursues efforts to market its products by making sales presentations, such actions may be regarded as constituting a substantial part of events giving rise to the claim.  Cartier v. Micha, 2007 U.S. Dist. LEXIS 4599, at *11; D'Anton Jos, S.L. v. Doll Factory, Inc., 937 F.Supp. 320, 321-22 (S.D.N.Y. 1996); Pilates, Inc. v. Pilates Institute, Inc., 891 F.Supp. 175, 182 (S.D.N.Y. 1995).

### B.   Venue Is Proper In This District

Here, venue is proper because a substantial part of the events giving rise to Buccellati's claims occurred in the Southern District of New York.  In support of its motion to dismiss for improper venue, Defendants conclude – without citing any supporting case law – that venue is improper because, in part, "a substantial part of the events or omissions giving rising to the claim did not occur in the Southern District of New York.  (Def. Br. 14.)  Defendants are mistaken.

Defendants' conduct in New York gives rise to this action because it has targeted the national market; sold and offered for sale infringing goods in New York; marketed and promoted infringing goods in New York; shipped infringing goods into New York; and had manufactured infringing promotional goods in New York.

### 1.   Defendants Actively Pursued Efforts To Market Infringing Goods In New York

Defendants embarked on an aggressive marketing campaign aimed at promoting its infringing products into the State of New York.  Defendants' agent Tara Ink contacted thirty-three (33) New York-based fashion editors in an effort to promote Defendants' infringing

products and secured nine (9) appointments.  (Tenney Exs. 7, 10.)  Defendants Azel and

Buccellati travelled to New York and gave sales presentations to nine New York-based fashion

editors.  (Laura Tr. 35:24 to 36:1.)  The editors took photographs of the infringing bags and

Defendants gave each editor LAURA BUCCELLATI-branded scarves, Lookbooks, media kits,

and left at least one bag with an editor.  (Tenney Ex. 15.)  Defendants followed up these

meetings with e-mails and sent infringing bags, Lookbooks, and media kits to the New York

editors.  (Id. at Ex. 15.)  Moreover, Defendants were actively pursuing New York retail buyers

Bergdorf Goodman, Saks Fifth Avenue, Barneys, and Neiman Marcus, in an effort to persuade

them to purchase Defendants' infringing handbags.  (Id. at Ex. 17.)

        Defendants' determined efforts to promote and offer for sale its infringing products are

sufficiently substantial to warrant venue in this Court.  "A substantial part of events occurs in

New York if the defendant targets New York by advertising and actively pursues efforts to

market the infringing product here."  Doll Factory, 937 F.Supp. at 321-22; Hsin Ten, 138

F.Supp.2d 449, 460 (finding proper venue despite the fact that plaintiff had not alleged a single

sale of the infringing goods in New York).

### 2.    Defendants Sold Infringing Product In New York

        In addition to promoting its infringing products in New York, Defendants have sold,

offered for sale, and accepted payments from New York residents.  The actions of the defendant

are paramount to the venue inquiry, not the motivation of the purchaser.  See Cartier v. Micha,

2007 U.S. Dist. LEXIS 4599, at *15.  Here, Defendants went to great lengths to complete the

transaction with Ms. Kaplan, knowing that its handbag was purchased by and would be shipped

to New York.  This sale is closely related to Buccellati's claims, and, thus, for this additional

reason, Defendants' motion to dismiss should be denied.

## VII.   THE MOTION TO TRANSFER SHOULD BE DENIED

### A.   Defendants Failed To Demonstrate That Florida Is A Proper Venue

Defendants bear the burden of proving that venue would be proper in the proposed

transferee forum – the Southern District of Florida.  (Def. Br. at 14)  Fifth Avenue of Long

Island Realty Associates v. Caruso Mgmt Co., Ltd., 2009 U.S. Dist. LEXIS 13369, *42

(E.D.N.Y. Feb. 17, 2009).  They have not done so.  The Court should consider:

> (1) the convenience of witnesses, (2) the convenience of the parties, (3) the locus
> of operative facts, (4) the availability of process to compel the attendance of
> unwilling witnesses, (5) the location of relevant documents and the relative ease
> of access to sources of proof, (6) the relative means of the parties, (7) the forums'
> familiarity with the governing law, (8) the weight accorded the plaintiffs choice of
> forum, and (9) trial efficiency and the interest of justice, based on the totality of
> the circumstances.

Id.

### B.   Defendants Failed To Meet Its Heavy Burden To Justify Transfer

#### 1.   Buccellati's Choice Of Home Forum Is Entitled To Considerable Weight[7]

Buccellati's choice of its home forum – New York – is entitled to substantial deference.

Totilo v. Herbert, 538 F.Supp.2d 638, 640 (S.D.N.Y. 2008) ("[T]he plaintiff's choice of forum is

entitled to substantial weight and will not be disturbed lightly.") (citations omitted); Piper

---

[7]     Defendants make much of the fact that the parties are involved in a pending trademark
opposition proceeding before the Trademark Trial and Appeal Board ("TTAB").  This
proceeding is irrelevant to this motion.  Trademark oppositions concern only the registrability of
trademark applications.  A party cannot stop another party from the using a mark in commerce
by way of a trademark opposition proceeding.
        In January 2010, Defendant Laura Buccellati LLC commenced a trademark opposition
against a recent Buccellati pending trademark application for BUCCELLATI because the
application was blocking registration of Defendant's trademark application for LAURA
BUCCELLATI (stylized).  Defendants' assertion that "Plaintiffs knew that they were not faring
well" is sheer speculation.  This opposition is still pending and there has been no finding by the
TTAB.  Buccellati owns three trademark registrations for BUCCELLATI that are unaffected by
the TTAB proceeding, and gains no tactical advantage in the TTAB by bringing a federal suit to
stop Defendants' unlawful and infringing conduct.

Aircraft Co. v. Reyno, 454 U.S. 235, 255 (1981); see also Norex Petroleum, Ltd. v. Access Indus., 416 F.3d 146, 154 (2d Cir. 2005).

**2.    The Convenience Of The Witnesses Does Not Favor Transfer**

Courts typically regard the convenience of witnesses as the most important factor in considering a motion to transfer.  Fifth Avenue, 2009 U.S. Dist. LEXIS 13369, *43.  When a party seeks the transfer on account of the convenience of witnesses, he must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover.  "[I]t is not the prospective number of witnesses in each district that determines the appropriateness of a transfer, but, rather, the materiality of their anticipated testimony."  Schwartz v. Marriott Hotel Svcs., Inc., 186 F.Supp.2d 245, 249 (E.D.N.Y. 2002).

*a.    Defendants' Witnesses Are Largely Irrelevant*

Defendants admit that in an infringement action, the most critical witnesses may be those officers and employees who are involved in the design, production, and sale of the infringing products. (Def. Br. at 15).  However, Defendants provide a laundry list of witnesses which appears to include every vendor that assisted Defendants' in the last five years.  (Declaration of Laura Buccellati ¶ 14; Declaration of Lilian Azel ¶ 14.)

Defendants Buccellati and Azel are the "critical witnesses" – i.e., those involved in the day-to-day design, production, and sale of the infringing products. (Def. Br. at 15).  As discussed infra Section I, they are the managing partners of Laura Buccellati, LLC, they designed the stylized logo and related promotional materials (Laura Tr. 167:20-23; 169:15-16); they design the infringing handbags (Id. at 11:3-11); they designed the website (Lilian Tr. 182:13-16); they work with retailers (Laura Tr. 11:3-11); and they have traveled to New York to promote their products. (Id. at 35:24 to 36:1.).

A cursory review of Defendants' list reveals that most of the witnesses are irrelevant—twelve retailers (six of which are outside Florida), ten charities, ten media outlets, five photographers, four catering services, three delivery services, three printers, a cobbler, a cosmetic studio, a florist, a storage facility, the U.S. Department of Fish and Wildlife, and a hair stylist.  Buccellati fails to see – and Defendants do not explain – what relevance such testimony would have on the issues in the case.  Even assuming, *arguendo*, that some of the witnesses on Defendants' list are relevant, Defendants fail to explain why it is more convenient for the twenty-or-so witnesses that are located far from Florida to appear in Florida court, as opposed to a New York court.

The information that Defendants left off this list is also revealing.  For example, No. 64 on Defendants' list is Motivators, Inc., a New York corporation where Defendants' purchases branded compact mirrors.  (Tenney Ex. 17.)  This is not apparent from reading the list, however, because Defendants neglected to provide an address.  Similarly, No. 14 on Defendants' list is WWD, a New York-based fashion magazine, but Defendant obscures this fact by listing a California address.  This is a curious omission considering that Defendants Buccellati and Azel met with the Accessories Market Editor at the WWD headquarters in New York in June 2010.

Another curiosity: Defendants exclude any mention of the names or addresses of the persons they met during the New York June 2010 trip.  If Defendants' deem its hair stylist and (four) caterers "critical witnesses," then the names of the fashion editors they met with while promoting LAURA BUCCELLATI-branded handbags in New York are certainly relevant.

### b.    *Plaintiffs' Witnesses Are In New York*

Buccellati's case-in-chief will require at least two Buccellati witnesses in New York, namely, Alberto Milani and Arthur Wardally, both of whom are based in New York.  (Milani ¶

11.).  Defendants incredulously contend that Buccellati has no witnesses, based on two declarations submitted in response to Defendants' very specific Rule 30(b)(6) notices of deposition.  This suggestion is mistaken.  The aforementioned declarations cover information concerning Defendants' activities in New York and the sale to Maxine Kaplan.  The declarations do not cover non-jurisdictional matters, including, without limitation, Buccellati's sales and promotion of the LAURA and BUCCELLATI trademarks in the United States and instances of actual confusion occurring outside New York.

This second factor thus boils down to Defendants' two Florida witnesses – Laura Buccellati and Lilian Azel – and at least two Buccellati witnesses in New York – Alberto Milani and Arthur Wardally.  No doubt Defendants Buccellati and Azel would prefer a transfer.  But a "[p]laintiff's choice of forum is respected whenever a transfer would merely shift the inconveniences from one party to another."  Fifth Avenue, 2009 U.S. Dist. LEXIS 13369, *43.

### 3.    The Remaining Factors Do Not Favor Transfer

The same applies to the other factors.  Not surprisingly, Defendants' documents are located in Florida, while Buccellati's are in New York.  (Milani ¶ 11.)  Defendants' infringing mark was conceived in Florida, but Buccellati's promotion of goods bearing the LAURA and BUCCELLATI trademarks – through which they both acquired secondary meaning and, in regard to the latter mark, fame in the United States[8] – is based in New York.  Id.

---

[8] Buccellati's efforts to achieve public recognition and fame of the LAURA and BUCCELLATI trademarks and the success of those efforts are major issues in this case.  "Secondary meaning" is one of the elements of Buccellati's infringement claim.  A variety of factors are relevant in evaluating secondary meaning, including "(1) advertising expenses, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) length and exclusivity of the mark's use."  Centaur Communications v. A/S/M Communications, 830 F.2d 1217, 1222 (2d Cir. 1987).  Similarly, "fame" is a prerequisite to a finding of federal trademark dilution.  Factors relevant to finding

Moreover, Buccellati asserts state law claims for trademark dilution pursuant to New York GBL § 349-50, common law trademark infringement, and unfair competition.  This Court is more familiar with these claims and thus, this factor weighs against transfer.  See e.g., Fifth Avenue, 2009 U.S. Dist. LEXIS 13369, *43.  So long as jurisdiction and venue are proper, Buccellati's decision to litigate in its home forum is entitled to deference in this Court; the motion to transfer should be denied.

## CONCLUSION

For the foregoing reasons, Buccellati respectfully requests denial of Defendants' motion in all respects.

Dated:  New York, New York
        June 18, 2012

                            Respectfully submitted,

                            EDWARDS WILDMAN PALMER LLP

        By:     _____
                Perla M. Kuhn (PK 9743)
                Rory J. Radding (RR 4042)
                H. Straat Tenney (HT 1224)
                750 Lexington Avenue
                New York, New York  10022
                Phone (212) 308-4411
                Fax (212) 308-4844

                *Attorneys for Plaintiffs Buccellati Holding Italia SPA
                and Buccellati, Inc.*

---

fame, include (1) duration, extent, and geographic reach of advertising and publicity of the mark, (2) amount, volume, and geographic extent of sales of goods or services offered under the mark, and (3) extent of actual recognition of the mark. 15 U.S.C. § 1125(c)(2)(A).

## CERTIFICATE OF SERVICE

I hereby certify that I am over the age of 18 years, not a party to this action, and that on the 18th day of June, 2012, I caused to be served a true and correct copy of the Plaintiffs' Opposition to Defendants' Motion to Dismiss for Lack of Jurisdiction or, Alternatively, to Transfer by overnight courier and electronic mail to the following attorneys for Applicant:

> David T. Azrin
> Gallet Dreyer & Berkey, LLP
> 845 Third Avenue
> New York, NY 10022
> dta@gdblaw.com
>
> Albert Bordas
> 5975 Sunset Drive, Suite 607
> Miami, FL 33143
> albert@bordasiplaw.com
>
> Leonardo G. Renaud
> 8105 NW 155th Street
> Miami Lakes, FL 33016
> leonardorenaud@aol.com

I further certify under penalty of perjury that the foregoing is true and correct.

Dated: June 18, 2012                    By: _____
      New York, New York                                  H. Straat Tenney