UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BUCCELLATI HOLDING ITALIA SPA,
and BUCCELLATI, INC.,

                            Plaintiffs,

- against -

LAURA BUCCELLATI, LLC, LAURA
BUCCELLATI, LILIAN AZEL, ABC
CORPORATIONS 1-10, and JOHN DOES 1-
10,

                            Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/27/2013

**MEMORANDUM
OPINION & ORDER**

11 Civ. 7268 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        In this action, Plaintiffs Buccellati Holding Italia SPA and Buccellati, Inc. allege that Defendants Laura Buccellati LLC, Laura Buccellati, and Lilian Azel have engaged in trademark infringement, false designation of origin, trademark dilution, unfair competition, and unfair and deceptive trade practices.

        Defendants have moved to dismiss for lack of personal jurisdiction and improper venue under Fed. R. Civ. P. 12(b)(2) and (3) or, alternatively, to transfer this action to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). Because this Court lacks personal jurisdiction over the Defendants, the motion to dismiss will be granted.

## BACKGROUND

I. **FACTS**[1]

    A. **The Parties**

Plaintiff Buccellati Holding Italia SPA is an Italian corporation with its principal place of business in Milan, Italy. (Cmplt. ¶ 4) This entity manufactures and sells products bearing the Buccellati trademarks, including jewelry, watches, silverware, writing instruments, ornamental boxes, cutlery, belt buckles, and handbags. (Id.) Plaintiff Buccellati, Inc. is a New York corporation with its principal place of business in the Bronx, New York. (Id. ¶ 5) Buccellati, Inc. is the exclusive distributor for Buccellati trademarked products in the United States. (Id.)

Defendant Laura Buccellati LLC is a Florida limited liability company with its principal place of business in Miami, Florida. (Id. ¶ 6) Defendants Laura Buccellati and Lilian Azel are co-founders of Laura Buccellati LLC, and both reside in Florida. (Id. ¶¶ 7-8)

The Buccellati family has been selling fine jewelry since the 1700's. (Id. ¶ 10) In the 1920's, the Buccellati family began manufacturing and selling handbags, clutches, and purses made of various materials, including leather, gold, silver, and textiles. (Id.) Plaintiffs allege that "[t]oday the Buccellati brand is synonymous with luxury, quality, and craftsmanship, and consumers and the trade instantly identify [Plaintiffs] as the source of all products and services bearing the Buccellati name and trademark." (Id.)

---

[1] A motion to dismiss for lack of personal jurisdiction is "'inherently a matter requiring the resolution of factual issues outside of the pleadings[,] . . . [and] all pertinent documentation submitted by the parties may be considered in deciding the motion.'" Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co., No. 00 Civ. 5563 (MBM), 2001 WL 1468168, at *1 (S.D.N.Y. Nov. 19, 2001) (quoting Pilates, Inc. v. Pilates Inst., Inc., 891 F. Supp. 175, 178 n.2 (S.D.N.Y. 1995)). Therefore, the following facts are drawn from the complaint, declarations, and exhibits submitted by the parties, and are construed in the light most favorable to Plaintiffs. Id.; see also A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993); CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986).

Plaintiffs' products and services are sold under several trademarks which Buccellati Holding Italia SPA owns and has registered with the U.S. Patent and Trademark Office. (Id. ¶ 11, Ex. A) The Buccellati trademarks are displayed on jewelry, watches, silverware, writing instruments, ornamental boxes, cutlery, belt buckles, handbags, and other products. (Id. ¶ 12) Plaintiffs have retail locations in Manhattan, Beverly Hills, and Aspen, Colorado. (Id.)

Plaintiffs have extensively advertised and promoted the products manufactured and services offered under the Buccellati trademarks. (Id. ¶ 13) Plaintiffs allege that

> [m]illions of consumers have been exposed to the Buccellati Trademarks through extensive advertising campaigns, in mainstream and industry magazines and other periodicals, as depicted in motion pictures, on the Internet, and in other forms of unsolicited media coverage. Products bearing the Buccellati Trademarks are closely associated with Buccellati's reputation in the eyes of the public and the trade. The Buccellati Trademarks are, thus, invaluable assets to Buccellati.

(Id.) Plaintiffs further allege that over the past five years they have sold "tens of millions of dollars" in products bearing Buccellati trademarks in the United States alone. (Id. ¶ 14)

B.   **The Alleged Infringement and Unfair Competition**

Laura Buccellati is a member of the Buccellati family, but she sold her interest in the Buccellati companies in 1989. (Id. ¶ 18) Plaintiffs claim, however, that Laura Buccellati and Lilian Azel, through Laura Buccellati LLC, are "attempt[ing] to capitalize on the popularity of the Buccellati Trademarks by using and/or permitting various companies to use [marks that infringe the Buccellati trademarks]." (Id. ¶¶ 18-19)

Plaintiffs further allege that Laura Buccellati, through Laura Buccellati LLC, has attempted to register trademarks containing the name Laura Buccellati, both in the United States and internationally. (Id. ¶ 21) In the United States, such attempted registration has been refused

3

on the basis that the name Laura Buccellati is likely to be confused with the Buccellati trademarks. (Id.)

Plaintiffs claim that Laura Buccellati is nonetheless designing, manufacturing, promoting, importing, and selling consumer products under the Laura Buccellati name and trademark, and is using other designs, logos, and indicia that are imitations of the Buccellati trademarks. (Id. ¶ 17) Plaintiffs further claim that these allegedly infringing marks are used on "handbags, carryalls, purses, wallets, belts, and scarves." (Id.) Plaintiffs claim that, in addition to using marks that infringe on the Buccellati trademarks, Defendants are using

> Laura Buccellati's relationship with the Buccellati family in promotional material to suggest an association with [Plaintiffs], all with the deliberate intention to cause consumers and the trade to believe that the products bearing the Infringing Mark[s] are authorized, sponsored, approved, endorsed or licensed by [Plaintiffs], or that Laura Buccellati LLC, or . . . Laura Buccellati, is in some way commercially affiliated with [Plaintiffs].

(Id. ¶ 23) Plaintiffs claim that Defendants' use of the alleged infringing marks has "caused (and will likely continue to cause)[] actual confusion in the marketplace, harm to the business reputation and goodwill of [Plaintiffs], and damage to [Plaintiffs'] business relations with consumers and prospective consumers." (Id. ¶ 24)

This action was filed on October 14, 2011. (Dkt. No. 1) On December 5, 2011, Defendants filed a pre-motion letter asserting, inter alia, that this Court lacks personal jurisdiction over them. (Dec. 5, 2011 Ltr. (Dkt. No. 32) at 2) After conducting a pre-motion conference (see Dkt. No. 19), the Court issued an order providing for sixty days of jurisdictional discovery, including both written discovery and depositions. (Dkt. No. 20) The instant motion was filed on June 4, 2012. (Dkt. No. 22)

C.  **Jurisdictional Discovery**

Much of the jurisdictional discovery focused on Defendants' late 2009 retention of Tara Solomon, Inc. d/b/a Tara Ink, a public relations firm. (See Tenney Decl., Ex. 3 (Solomon Dep. Tr.) at 10-11; id., Ex. 10)  Defendants hired Solomon – who is based in Los Angeles and Miami Beach – to generate press attention for, and retailer interest in, Defendants' handbag collection. (Id., Ex. 3 at 8)

Solomon "arranged . . . New York deskside editor appointments to introduce [Defendants'] Fall/Winter 2010 collection," and spoke with editors at Conde Nast Traveler, InStyle, Lucky, Marie Claire, Town & Country, Vogue, W, and WWD. Solomon also contacted a number of "high-end retailers" in New York and Washington, D.C. about Defendants' collection, including buyers at Bergdorf Goodman, Saks Fifth Avenue, Barneys, and Neiman Marcus. (Id., Ex. 8 at 4, Ex. 9 at 2-4, Ex. 11 at 2, Ex. 12 at 2)

In June 2010, Defendants Laura Buccellati and Azel traveled to New York City with Solomon for the purpose of meeting with a number of magazine fashion editors. (Id., Ex. 1 (L. Buccellati Dep. Tr.) at 35-36; id., Ex. 9 at 1)  The purpose of the meetings was to showcase Laura Buccellati's Fall 2010 handbag collection and to obtain "free placements in . . . magazines." (Id., Ex. 1 (L. Buccellati Dep. Tr.) at 35-36; id., Ex. 9 at 1)  Approximately ten meetings took place in Manhattan with fashion editors over a two-day period. (Tenney Decl., Ex. 13)  During the New York meetings with editors, Defendants distributed Laura Buccellati scarves, catalogs, and press kits. (Tenney Decl., Ex. 3 (Solomon Dep. Tr.) at 23-26)

Jurisdictional discovery also revealed that Defendants' website – www.laurabuccellati.com – has made only one sale in New York. (L. Buccellati Decl. ¶¶ 10, 12-13; Azel Decl. ¶¶ 9, 11, 12)  That sale took place on October 5, 2011, and was made to Plaintiffs'

5

New York-based private investigator, Maxine Kaplan. (Id.) Kaplan purchased a Laura Buccellati-branded handbag for $1,425, and arranged for it to be shipped to her New York work address. (Azrin Decl., Ex. A (Kaplan Dep. Tr.) at 9, 20-25, 32, 55-56, 84) No other merchandise has been sold by Defendants to New York residents, either through Defendants' website or otherwise. (L. Buccellati Decl. ¶¶ 10, 12-13; Azel Decl. ¶¶ 9, 11, 12) The website remains available to New York consumers, however. (Tenney Decl., Ex. 1 (L. Buccellati Dep.) at 42-43, 154)

## DISCUSSION

### I. THE COURT LACKS PERSONAL JURISDICTION OVER DEFENDANTS

#### A. Legal Standard

"The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). "In deciding [such a motion,] a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); accord Credit Lyonnais Secs. (USA), Inc. v. Alcantara, 183 F.3d 151, 153 (2d Cir. 1999). Here, the Court permitted the parties to conduct jurisdictional discovery over a sixty-day period. (See Dkt. No. 20)

The nature of plaintiff's burden to demonstrate jurisdiction "varies depending on the procedural posture of the litigation." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). Prior to discovery, a Rule 12(b)(2) motion will fail where plaintiff has "[pled] in good faith legally sufficient allegations of jurisdiction." Id. (internal citation omitted).

6

Where, however, "there has been discovery on the issue of [personal] jurisdiction, the plaintiff's prima facie showing must include 'an averment of facts that, if credited by the trier, would suffice to establish jurisdiction over the defendant.' The plaintiff cannot rely merely on conclusory statements or allegations; rather, the prima facie showing must be 'factually supported.'" Yellow Page Solutions, Inc. v. Bell Atl. Yellow Pages Co., No. 00 Civ. 5663 (MBM), 2001 WL 1468168, at *3 (S.D.N.Y. Nov. 19, 2001) (quoting Ball, 902 F.2d at 197) (internal citations omitted); accord Morrison v. N.Y. State Div. for Youth Children & Family Servs., No. 98 Civ. 643, 2000 WL 532762, at *1 (S.D.N.Y. Apr. 25, 2000)

"In a federal question case where a defendant resides outside the forum state, a federal court applies the forum state's personal jurisdiction rules 'if the federal statute does not specifically provide for national service of process.'" PDK Labs v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997) (citing Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990)). "[T]he Lanham Act does not provide for nationwide service of process[;]" therefore "this Court must look to New York's jurisdictional statutes to determine personal jurisdiction." Greenlight Capital, Inc. v. GreenLight (Switz.) S.A., No. 04 Civ. 3136 (HB), 2005 WL 13682, *2 (S.D.N.Y. Jan. 3, 2005) (citing Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004)).

New York's long-arm statute provides that

> a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or 2. commits a tortious act within the state . . . ; or 3. commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . .

N.Y. C.P.L.R. § 302(a).

7

The exercise of personal jurisdiction must also comport with constitutional due process principles.[2] "In this case, because the plaintiffs' assertion of personal jurisdiction rests upon a state long-arm statute, the relevant constitutional constraints are those imposed by the Due Process Clause of the Fourteenth Amendment." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir. 2012). "Where, as here, the plaintiffs premise their theory of personal jurisdiction upon the New York long-arm statute, [courts] first consider whether the requirements of the statute have been satisfied before proceeding to address whether the exercise of jurisdiction would comport with the Due Process Clause." Id. at 61.

### A.   Application of New York's Long-Arm Statute

Defendants argue that two provisions of New York's long-arm statute give this Court personal jurisdiction over the Defendants: CPLR § 302(a)(1) – the "transacting business" prong of the long-arm statute – and CPLR § 302(a)(3)(ii), which addresses tortious acts committed outside New York that cause injury to a person or property inside New York. (See Pltfs. Opp. Br. 7-15)

#### 1.   Section 302(a)(1) – Transacting Business in New York

CPLR § 302(a)(1) provides, in pertinent part, that a court "may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state," so long as the plaintiff's "cause of action aris[es] from" that transaction. CPLR §302(a)(1). Accordingly, "in determining whether personal jurisdiction may

---

[2] "The constitutional analysis under the Due Process Clause consists of two separate components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry. The 'minimum contacts' inquiry requires [a court] to consider 'whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction.' The 'reasonableness' inquiry requires [a court] to decide 'whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice' – that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case.'" Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 60 (2d Cir. 2012) (internal citation omitted).

8

be exercised under section 302(a)(1), 'a court must decide (1) whether the defendant "transacts any business" in New York and, if so, (2) whether this cause of action "aris[es] from" such a business transaction.'" Licci, 673 F.3d at 60 (quoting Best Van Lines, Inc. v. Walker, 490 F.3d 239, 246 (2d Cir. 2007)).

"[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." Id. at 61 (internal quotation omitted). "As to § 302(a)(1)'s second requirement, 'a suit will be deemed to have arisen out of a party's activities in New York if there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" HSH Nordbank AG N.Y. Branch v. Street, No. 11 Civ. 9405 (DLC), 2012 WL 2921875, at *4 (S.D.N.Y. July 18, 2012) (citing Licci, 673 F.3d at 66). "A single act within New York will, in the proper case, satisfy the requirements of section 302(a)(1)." Licci, 673 F. 3d at 62.

"Although Section 302(a)(1) is typically invoked in breach of contract cases[,] it applies as well to actions in tort when supported by a sufficient showing of facts." Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 24 (2d Cir. 2004) (internal quotation and citations omitted) The Second Circuit has found that a "Lanham Act claim sounds in tort." Id. (citing PPX Enters., Inc. v. Audiofidelity, Inc., 746 F.2d 120, 124-25 (2d Cir. 1984) (Section 43(a) of the Lanham Act "created a new statutory tort")).

### a. Analysis

In arguing that Defendants transacted business in New York, and that their cause of action arises out of that transaction of business, Plaintiffs rely on the following:

1. the sale of an allegedly infringing bag, over Defendants' website, to Plaintiffs' New York-based investigator;

9

2.  Solomon's contact with fashion editors in New York to schedule "deskside" appointments;

3.  Solomon's contact with retail buyers for large department stores in New York City;

4.  the two days of meetings with fashion editors in New York City in June 2010;

5.  the distribution of allegedly infringing handbags, catalogs, and media kits to the fashion editors; and

6.  a contract with Motivators, Inc., a New York company, for women's vanity mirrors.

(Pltfs. Opp. Br. 8-9)

It is undisputed, however, that Defendants have no office, employees, sales representatives, distributors, or retailers in New York, and that they do not own or rent any property in New York. The only sale to a New York resident of Defendants' merchandise – indeed, the only sale ever over Defendants' website – was to Plaintiffs' investigator. Defendants have sold no other merchandise in New York. Moreover, the New York meetings with fashion editors led to no publicity for Defendants' products, and there is no evidence that any of Solomon's efforts led to any purchase of Defendants' products anywhere. Defendants did not enter into advertising agreements with anyone in New York, nor did they purchase advertisements in the magazines whose editors they visited. (L. Buccellati Decl. ¶¶ 9-18; Azel Decl. ¶¶ 8-17) Under these circumstances, the activities cited by Plaintiffs are not sufficient to justify this Court's exercise of personal jurisdiction over Defendants.[3]

---

[3] Plaintiffs do not argue that Defendants' interactive website, which allows New York residents (and consumers worldwide) to purchase Laura Buccellati products, is a sufficient basis for the exercise of personal jurisdiction under Section 302(a)(1). It is, of course, "well established that one does not subject himself to the jurisdiction of the courts in another state simply because he maintains a web site which residents of that state visit." Starmedia Network, Inc. v. Star Media, Inc., No. 00 Civ. 4647 (DLC), 2001 WL 417118, at *3 (S.D.N.Y. Apr. 23, 2001) (quoting Nat'l Football League v. Miller, No. 99 Civ. 11846 (JSM), 2000 WL 335566, at *1 (S.D.N.Y. Mar. 30,

The Court begins with Plaintiffs' purchase – through their New York-based investigator Maxine Kaplan – of a handbag from the Defendants' website, days before the Complaint in this action was filed. (Azrin Decl., Ex. A (Kaplan Dep. Tr.) at 9, 20-25, 32, 55-56, 84) It is obvious that Plaintiffs made this purchase – the only sale of Laura Buccelatti merchandise to a New York resident – in order to bolster their argument that this Court has personal jurisdiction over Defendants.

While there is not unanimity on this issue, the vast weight of authority is that a finding of personal jurisdiction may not rest solely on an act such as this instigated by a plaintiff. Courts in this District and elsewhere have expressed "hostility towards finding jurisdiction under such potentially manufactured circumstances." Unique Indus., Inc. v. Sui & Sons Int'l Trading Corp., No. 05 Civ. 2744 (KMK), 2007 WL 3378256, at *5 (S.D.N.Y. Nov. 9, 2007) (citing ISI Brands, Inc. v. KCC Int'l, Inc., 458 F. Supp. 2d 81, 89 (E.D.N.Y. 2006) (noting, in a case where purchases of counterfeit products were made by plaintiff's agents, "[i]t is beyond dispute that jurisdiction cannot be manufactured by the Plaintiff")); Mattel, Inc. v. Anderson, No. 04-CV-5275 (RCC), 2005 WL 1690528, at *2 (S.D.N.Y. July 18, 2005) ("'Defendant[ ] cannot be said to have 'purposefully' availed [herself] of the protections of this forum when it was an act of someone associated with plaintiff, rather than [her] web site advertising, that brought [her]

---

2000); see also Savage Universal Corp. v. Grazier Constr., Inc., No. 04 Civ. 1089 (GEL), 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004). ("It stretches the meaning of 'transacting business' to subject defendants to personal jurisdiction in any state merely for operating a website, however commercial in nature, that is capable of reaching customers in that state, without some evidence or allegation that commercial activity in that state actually occurred."). "The guiding principle which has emerged from the case law is that whether the exercise of personal jurisdiction is permissible is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000) (internal quotations omitted). Here, the only business Defendants conducted over their website with a New York customer (or anyone else) is the one transaction with Plaintiffs' investigator. As explained below, this incident is not sufficient to justify this Court's exercise of personal jurisdiction over Defendants.

products into this forum.'" (quoting Millennium Enters., Inc. v. Millennium Music, LP, 33 F. Supp. 2d 907, 911 (D. Or. 1999)); Edberg v. Neogen Corp., 17 F. Supp. 2d 104, 112 (D. Conn. 1998) (noting that "the courts have repeatedly held that jurisdiction may not be manufactured by the conduct of others"); Elbex Video Kabushiki Kaisha v. Taiwan Regular Elec. Co., No. 93 Civ. 6160 (KMW), 1995 WL 224774, at *2 (S.D.N.Y. Apr. 14, 1995) (finding no personal jurisdiction where plaintiff arranged for former employee to make purchase from defendant for purpose of creating jurisdiction); see also Clarus Transphase Scientific, Inc. v. Q-Ray, Inc., No. C 06-3450 JF (RS), 2006 WL 2374738, at *3 n.3 (N.D. Cal. Aug. 16, 2006) ("A plaintiff cannot manufacture personal jurisdiction in a trademark case by purchasing the accused product in the forum state." (citing Millennium Enters., 33 F. Supp. 2d at 911)); Jell-E-Bath Inc. v. Crystal Mud Spa, No. 05-1703-KI, 2006 WL 1305113, at *3 n.1 (D. Or. May 8, 2006) ("Plaintiff cannot manufacture personal jurisdiction."); McGill Tech. Ltd. v. Gourmet Techs., Inc., 300 F.Supp.2d 501, 506 (E.D. Mich. 2004) (disregarding a contact with forum state where contact was likely the product of plaintiff's counsel's family member and initiated for purposes of litigation) (citing, inter alia, Elecs. For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003)); Millennium Enters., 33 F. Supp. 2d at 911 (holding that internet purchase of one compact disc by plaintiff's counsel did not constitute purposeful availment); Sunwest Silver, Inc. v. Int'l Connection, Inc., 4 F. Supp. 2d 1284, 1287 (D.N.M. 1998) ("Courts have held repeatedly that a defendant's responses to the unilateral acts of a plaintiff are not contacts with the forum state sufficient to establish personal jurisdiction."); DeSantis v. Hafner Creations, Inc., 949 F. Supp. 419, 424 (E.D. Va. 1996) (holding that personal jurisdiction was lacking when the only contact by defendant with forum state was initiated by plaintiff's counsel's paralegal, for the sole purpose of establishing personal jurisdiction); Network Prof'ls, Inc. v. Network Int'l Ltd., 146 F.R.D. 179,

181 n.1 (D. Minn. 1993) ("[A] plaintiff cannot manufacture personal jurisdiction through unilateral activities such as telephoning the defendant." (citing Wines v. Lake Havasu Boat Mfg., Inc., 846 F.2d 40, 43 (8th Cir. 1988)).

The logic of these cases is that a plaintiff cannot rely solely on its own manipulative acts to create jurisdiction, and that in such circumstances the defendant cannot be said to have purposefully availed itself of the privilege of conducting activities in the state selected by plaintiff. Moreover, in cases where, as here, plaintiffs' causes of action are founded on notions of consumer confusion, courts have concluded that it is improper to rely on a transaction – for jurisdictional purposes – in which the purchaser obviously was not confused as to the source of the merchandise. See, e.g., ISI Brands, 458 F. Supp. 2d at 88 (noting that plaintiff's agents' purchase of infringing product had "nothing to do with Plaintiff's action for infringement since [plaintiff] cannot claim to have been confused as to with whom [they] [were] dealing" (internal quotation omitted; alterations in original)); cf. McBee v. Delica Co., 417 F.3d 107, 128 (1st Cir. 2005) (denying preliminary injunction for alleged Lanham Act violations where sales "were all made to [plaintiff's] own investigators, who were brought in to assist in this litigation and therefore fully understood [plaintiff's] lack of any relationship with [defendant]").[4]

Under the unusual circumstances of this case, in which Plaintiffs have not offered evidence of any meaningful contacts between Defendants and New York, this Court will not rely

---

[4] Even in those cases that rely on a single sale made to a plaintiff's investigator, courts have cited other contacts between the forum state and the defendant. See, e.g., See Cartier v. Seah LLC, 598 F. Supp. 2d 422, 425-26 (S.D.N.Y. 2009) (citing, inter alia, distribution of 150,000 copies of defendant's catalog to airline locations in New York State); Philip Morris USA Inc. v. Veles Ltd., No. 06 Civ. 2988 (GRD), 2007 WL 725412, at *4 (S.D.N.Y. Mar. 12, 2007) (citing plaintiff's undisputed claim that defendant had "significant and continuous revenue from Internet sales of cigarettes to U.S. consumers in this judicial district").

13

on the sale of a handbag to Plaintiffs' investigator as a basis for exercising personal jurisdiction over the Defendants.

The remaining contacts with New York cited by Plaintiffs are not sufficient to justify this Court's exercise of personal jurisdiction over the Defendants. The meetings with the fashion editors and retail buyers led to nothing: no articles were published, no advertisements were purchased, no contracts were entered into, and no goods were sold as a result of these meetings. The distribution of free samples and media kits to these editors likewise led to no commercial activity, and does not constitute the transaction of business in New York.

Meetings and communications that never result in a business relationship or transaction do not provide a basis for the exercise of personal jurisdiction. See, e.g., Aquline Capital Partners LLC v. FinArch LLC, 861 F. Supp. 2d 378, 388 (S.D.N.Y. 2012) ("New York courts have held that . . . exploratory meetings taking place in New York, 'leading to nothing more than a proposal that was itself the subject of further negotiations over the phone, by mail, and in meetings outside New York,' are not sufficient contacts to constitute the transaction of business within the meaning of CPLR 302(a)(1).") (quoting C-Life Group Ltd. v. Generra Co., 235 A.D.2d 267, 267 (1st Dep't 1997)); Benson & Assocs. Inc. v. Orthopedic Network of N.J., No. 98 Civ. 1020 (LMM), 1998 WL 388531, at *4 (S.D.N.Y. July 13, 1998) ("[M]eetings in the forum state that are exploratory, unproductive, or insubstantial are insufficient to establish requisite contacts with the state.") (citing PaineWebber Inc. v. WHV, Inc., No. 95 Civ. 0052 (LMM), 1995 WL 296398, at *3 (S.D.N.Y. May 16, 1995)).[5]

---

[5] The alleged contract with Motivators, Inc. (see Tenney Decl., Ex. 17; Pltfs. Opp. Br. 9) is entirely unexplained. While it appears from Plaintiffs' partially illegible exhibit (see Tenney Decl, Ex. 17) that Laura Buccellati was invoiced $743.50 by Motivators, Inc. – based in Westbury, New York – for the purchase of 100 round compact mirrors, Plaintiffs have made no

In sum, none of the contacts with New York cited by Plaintiffs are sufficient to provide a basis for the exercise of personal jurisdiction under CPLR § 302(a)(1).

### 2. Jurisdiction Based on a Tortious Act Outside New York

CPLR § 302(a)(3) provides for the exercise of personal jurisdiction where the defendant "commits a tortious act without the state causing injury to person or property within the state . . . if he . . . expects or reasonably should expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce. . . ." CPLR § 302(a)(3)(ii).

#### a. Injury Within New York

Plaintiffs have sufficiently alleged that Defendants committed a tortious act of trademark infringement and that injury from the alleged act occurred in New York. Accordingly, Plaintiffs have satisfied the initial two requirements of Section 302(a)(3)(ii).

In order to make out a prima facie case for the exercise of personal jurisdiction under Section 302(a)(3)(ii), Plaintiffs must allege anticipated in-state economic injury from an out-of-state tort. Sybron Corp. v. Wetzel, 46 N.Y.2d 197, 203-04 (1978). The Lanham Act imposes liability on any person who "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services. . . ." 15 U.S.C. § 1114(1)(a). Therefore, for purposes of determining jurisdiction under Section 302(a)(3)(ii), the alleged injury stemming from infringement of a trademark "in the form of damage to goodwill, lost sales, or lost customers" will occur "where the trademark owner resides and conducts business," because this is where the "'first effects' of trademark infringement or dilution are typically felt." Savage

---

showing that the compact mirrors bear any infringing mark or are otherwise relevant to the personal jurisdiction determination.

Universal Corp. v. Grazier Constr., Inc., No. 04 Civ. 1089 (GEL), 2004 WL 1824102, at *9 (S.D.N.Y. Aug. 13, 2004).

Here, Plaintiffs allege that the Defendants' sale of merchandise under the Laura Buccellati mark infringes their trademarks, threatens the distinctive quality of their trademarks, and has confused and will confuse consumers. Plaintiffs' allegations demonstrate a tortious act resulting in an injury in New York, given that they reside and/or conduct business in New York. While Plaintiffs have not demonstrated sales of Defendants' products in New York – other than to their private investigator – it is undisputed that New York residents can view Defendants' website containing the allegedly infringing marks. Under such circumstances, courts have found the "injury within New York" element to be satisfied. See, e.g., Starmedia Network, Inc. v. Star Media, Inc., No. 00 Civ. 4647 (DLC), 2001 WL 417118, at *2 (S.D.N.Y. Apr. 23, 2001) (trademark infringement alleged based on defendant's use of plaintiff's trademarks on defendant's website; "Under New York law, injury 'within the state' includes harm to a business in the New York market through lost sales or customers, as well as harm and threatened harm in the New York market resulting from the confusion and deception of New York computer users . . . . Plaintiff's allegations of harm resulting from the potential for confusion and deception satisfy the requirement of an injury 'within the state.'") (internal citations omitted); Energy Brands, Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 470-71 (S.D.N.Y. 2008) ("Glacéau also persuasively argues that its actual or potential New York customers were confused or deceived merely by viewing images of Spiritual Water products on defendants' website. This lends further support to a finding of injury within the state.").

### b. Expectation of Consequences

CPLR § 302(a)(3)(ii) requires that a defendant, in addition to causing injury within New York, must have expected, or reasonably should have expected, its allegedly tortious actions to have consequences in New York. CPLR § 302(a)(3)(ii).

> [T]o establish a reasonable expectation of consequences in New York, the plaintiff must show an effort by the defendant to serve the New York market. "New York courts have asserted that the simple likelihood or foreseeability that a defendant's product will find its way into New York does not satisfy this element, and that purposeful availment of the benefits of the laws of New York such that the defendant may reasonably anticipate being haled into New York court is required."

Starmedia, 2001 WL 417118, at *3 (quoting Kernan v. Kurz-Hastings, Inc., 175 F.3d 236, 241 (2d Cir. 1999)). "Thus, the defendant must make 'a discernable effort to directly or indirectly serve the New York market.'" Id. (quoting Kernan, 175 F.3d at 241). Here, there is no evidence of a "discernable effort [by Defendants] to directly or indirectly serve the New York market." Id.

Plaintiffs argue that the "tangible manifestations" of Defendants' desire to serve the New York market are

> (1) posting statements on [Defendants'] website that online purchases are "available to residents of the United States, for delivery to clients in the United States," including New York; (2) launching a national marketing campaign; (3) contacting and meeting with New York-based fashion editors to promote Defendants' infringing handbags; (4) selling and/or shipping infringing handbags into New York; and (5) contracting with a New York company to manufacture branded promotional materials.

(Pltfs. Opp. Br. 14 (internal citations omitted))

The existence of Defendants' website carries little weight under the unusual circumstances of this case. It is undisputed that although Defendants' website has been extant for three years or more, Defendants' only sale of any merchandise over the website was to Plaintiffs' investigator. (L. Buccellati Decl. ¶¶ 10, 12-13; Azel Decl. ¶¶ 9, 11, 12) Indeed, since

17

Laura Buccellati, LLC was founded, the only sale of any merchandise to a New York customer is the sale to Plaintiffs' investigator. (Id.) Moreover, Defendants have offered uncontradicted evidence that their business is conducted through private parties, by word of mouth, and through "trunk shows" at retailers or in private homes – none of which has taken place in New York. (L. Buccellati Decl. ¶¶ 2, 6; Azel Decl. ¶¶ 2, 6) In short, nothing about Defendants' website or the way they have conducted their business demonstrates an attempt to "serve the New York market" or suggests that they should have expected their conduct to have consequences in New York.

Defendants' hiring of Solomon, the trip to New York to meet with fashion editors, and the samples sent to fashion editors in New York, do not change the analysis. While these facts demonstrate an attempt to attract publicity for Defendants' products – an attempt that was unsuccessful – there is no evidence that these meetings were directed at the New York market. Defendants' meetings were with fashion editors of national publications, such as Conde Nast Traveler, InStyle, Lucky, Marie Claire, Town & Country, Vogue, W, and WWD. (Tenney Decl., Ex. 8 at 4)

Finally, "contracting with a New York company to manufacture branded promotional materials" (Pltfs. Opp. Br. 14), is a reference to Motivators, Inc. and Laura Buccellati's purchase of 100 compact mirrors. As noted above, the facts concerning this incident are entirely unclear. In particular, Plaintiffs have not offered evidence that the compacts were branded in a fashion that infringed their trademarks.

The cases cited by Plaintiffs (Pltfs. Opp. Br. 13-14) do not support their argument that the facts discussed above are sufficient for the exercise of personal jurisdiction under CPLR § 302(a)(3)(ii). In Parker Waichman Alonso LLP v Orlando Firm, P.C., 09 Civ. 7401 (CM),

2010 WL 1956871 (S.D.N.Y. May 14, 2010), for example, the defendant lawyer – who operated an infringing website – admitted that "it [was] his intention to reach New York." There was also evidence that the defendant had "sign[ed] up six New York clients . . . via the website," and that he had "conducted settlement negotiations in New York for a class action that ultimately settled for $7 million." Parker Waichman, 2010 WL 1956871, at *10. Similarly, in Am. Network, Inc. v. Access America/Connect Atl., Inc., 975 F. Supp. 494, 498 (S.D.N.Y. 1997), defendant had "signed up six New York subscribers" through its infringing website. Likewise, in Starmedia, defendant admitted that the purpose of its website was to "attract new customers, including customers from New York," and the court found that defendant had "used its website to attract and service business across the nation, including in New York, and ha[d] received substantial revenue from those interstate sales." Starmedia, 2001 WL 417118, at *1, *3; see also Savage Universal Corp., 2004 WL 1824102, at *9 (jurisdiction found under Section 302(a)(3)(ii) where defendant used his websites to pursue "spiteful campaign of trademark infringement and defamation" against New York-based company).

   Given the undisputed evidence that (1) Defendants' business plan had no component of sales to New York; (2) Defendants never had any New York customers; (3) Defendants' website generated no sales and no revenue for Defendants, whether from New York or elsewhere; and (4) the only sale Defendants ever made over their website, and the only sale they ever made to a New York customer, was their sale to Plaintiffs' New York-based investigator, the cases cited by Plaintiffs do not demonstrate that this Court has jurisdiction over the Defendants under Section 302(a)(3)(ii). See Royalty Network Inc. v Dishant.com, LLC, 638 F. Supp. 2d 410, 424 (S.D.N.Y. 2009) (finding no jurisdiction under Section 302(a)(3)(ii) where plaintiff had not "establish[ed] that [through their website] defendants purposefully targeted New

19

York's Indian American population or otherwise targeted their activities toward [New York] state").

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk of the Court is directed to terminate the motion (Dkt. No. 22) and to close this case.

Dated: New York, New York
       March 27, 2013

                                        SO ORDERED.

                                        _____
                                        Paul G. Gardephe
                                        United States District Judge